

U.S. Department of Justice

*United States Attorney*
*Eastern District of New York*

TH:MRG  
F.#2016R01033

*271 Cadman Plaza East*
*Brooklyn, New York 11201*

May 16, 2022

<u>By ECF and Email</u>

The Honorable Frederic Block  
United States District Judge  
United States District Court  
Eastern District of New York  
225 Cadman Plaza East  
Brooklyn, New York 11201

   Re: United States v. Gene Borrello  
     <u>Criminal Docket No. 16-474 (FB)</u>

Dear Judge Block:

  The government submits this letter in connection with the sentencing of the defendant Gene Borrello for his violation of supervised release, which is currently scheduled for June 3, 2022. For the reasons set forth below, the government respectfully requests that the Court impose a sentence within the United States Sentencing Guidelines ("U.S.S.G." or "Guidelines") range, which is 8 to 14 months' imprisonment, to be followed by a three-year term of supervised release.

I. <u>Factual and Procedural Background</u>

  On November 9, 2016, the defendant pled guilty before United States Magistrate Judge Peggy Kuo, to (a) racketeering, including predicate acts of extortion conspiracy, illegal gambling, murder conspiracy/attempted murder, arson conspiracy/attempted arson, robbery and illegal gambling; (b) assault in aid of racketeering; (c) unlawful use of a firearm during a crime of violence; (d) arson; and (e) two counts of

Hobbs Act robbery conspiracy. (Borrello's Presentence Investigation Report ("PSR"), ¶ 1.)[1] On November 16, 2016, the Court accepted Borrello's guilty plea. (Id. ¶ 89.)

On December 6, 2019, the Court sentenced the defendant to time served followed by three years of supervised release. (July 30 Report at 5.) At sentencing, the Court also imposed special conditions, including that the defendant could not associate with individuals affiliated with organized crime. (Id. ¶ at 6.)

On March 26, 2021, Borrello pled guilty to violating the terms of his supervised release by committing a new crime (interstate threats, in violation of 18 U.S.C. ¶ 875(b)); associating with individuals engaged in criminal activity; and associating with individuals affiliated with organized crime. (See July 30 Report at 2-5.) The first violation stemmed from threats Borrello made to his ex-girlfriend and her family members, some of which are included below.

| Borrell Audio | Instagram Audio Message |
|---|---|
| **Message One** | "the minute you call the cops on me and grow those balls, you watch, I will blow your husband's head right off in the middle of the street, fucking try me" |
| **Message Two** | "do not make me come to your fucking mother's house right now, I am dead fucking serious" |
| **Message Three** | "don't forget about me, remember what I used to do, I will grab your father right now and beat the dog shit out of him…Be happy I don't grab you and your fat ugly husband by the neck and drag you down the street." |

(See Violation Report, dated February 12, 2021 ("February 12 Report") at 8.)

In addition, Borrello violated the terms of his supervised release by associating with convicted felons, including those associated with organized crime, primarily by hosting a podcast titled, "The Johnny and Gene Show." (Id. at 10-11.) Borrello produced twenty-seven of these podcasts even after he was directed to refrain from associating with known convicted felons. (Id.) On his podcast, Borrello glorified all aspects of organized criminal

---

[1] A further description of Borrello's conduct is set forth in the July 30, 2021 violation report prepared by the United States Probation Department for the Eastern District of New York ("July 30 Report"). (See July 30 Report at 2-5.)

activities and described in detail various acts of violence in which he and his co-host, John Alite, had participated. In one segment, on September 12, 2020, Borrello hosted on his podcast Rob Rubeo, a former Genovese Crime Family member, who was also on supervised release. (Id. at 12.) Rubeo pled guilty to violating the terms of his supervised release in the Southern District of New York in connection with his appearance on the podcast. United States v. Rubeo, 12-CR-260 (RJS) (S.D.N.Y.) (Dkt. 72, 104).

Based on the conduct described above, on March 26, 2021, Borrello's supervised release was revoked, and the Court sentenced him to 120 days in custody, three years of supervised release and imposed special conditions. (July 30 Report at 7.) One special condition included a directive that Borrello refrain from participating in organized crime related podcasts, internet shows, or other similar programing, and refrain from using or accessing Instagram for a period of one year. (Id.) At the March 26, 2021 sentencing, the Court took notice of Borrello's "bad track record" and warned him against committing additional violations of his supervised release. Further, the Court stated that it was giving Borrello a "break," but it would be his last and, were there any additional violations, Borrello could receive a lengthy sentence of imprisonment.

Borrello was released from custody in June of 2021. On June 21, 2021, Borrello signed the conditions of supervised release, which prohibit him from participating in any way with organized crime-related internet shows, discussing criminal activity or organized crime during the period of supervised release. (Id. at 8.) Borrello did not go a month before—again—violating the terms of his supervised release set forth in the Court's Order dated March 26, 2021. (Id. at 7-10.) Specifically, Borrello created and uploaded to YouTube incendiary videos in which, among other things, he glorified his past violent incidents and discussed his criminal history. (Id.)

For example, in a YouTube video titled "Getting violated by probation and going back to jail," Borrello discussed his version of the violation incident and provided a backstory regarding his ex-girlfriend and her husband. Borrello made disparaging remarks regarding his ex-girlfriend's husband, stating, "I'm not your fucking fat, goofy, boyfriend husband from Long Island. That fucking fat …. I got nasty and I said I'll blow his head off…" (Id. at 9.) Borrello also discussed other incidents with organized crime associates, and described private information about these individuals, including information about an organized crime member's wife and her sexual activity. (Id.) Borrello also made other comments regarding "shooting rats" and glorifying violence within the community of Howard Beach, Queens. (Id.)

As another example, on a YouTube video named "Ronnie do you smell that," Borrello described how he and Ronald Giallanzo, a federally convicted felon and former acting captain in the Bonanno Crime Family, assaulted a victim to recover money. (Id. at 10.) Borrello glorified the incident by explaining that he was using brass knuckles and hitting the victim. Borrello stated on the video "Ron do you smell that?... The dude shit himself. We literally beat the shit out of him." Borrello further described bringing the

3

victim back to the victim's residence where Borrello continued to physically assault the victim in front of his family. In the end, Borrello explained "how dangerous it is when you owe the 'mafia' money." (Id.)

On November 16, 2021, the defendant pled guilty to charges one and two of the July 30, 2021 Violation Report. (See Minute Entry, dated 11/16/21.)

Borrello has a lengthy criminal history, and he is in criminal history category VI. (July 30 Report at 5.)

II. Argument

        A.      Sentencing on a Violation of Supervised Release

A district court has "broad discretion" in imposing sentencing, and in the context of a violation of supervised release proceeding, the Court can revoke supervised release and order a term of imprisonment followed by additional supervision. See United States v. Wirth, 250 F.3d 165, 169 (2d Cir. 2001).

As the Second Circuit has explained, "'the primary goal of a revocation sentence' ought to be 'to sanction the violator for failing to abide by the conditions of the court-ordered supervision,' in order to account for the breach of trust inherent in failing to appreciate the privileges associated with such supervision." United States v. Sindima, 488 F.3d 81, 86 (2d Cir. 2007) (quoting U.S.S.G. chap. 7, pt. A.3(b)); accord United States v. Gonzalez, 634 F. App'x 15, 18 (2d Cir. 2015). "Thus, 'at revocation the court should sanction primarily the defendant's breach of trust, while taking into account, to a limited degree, the seriousness of the underlying violation and the criminal history of the violator.'" Sindima, 488 F.3d at 86 (quoting U.S.S.G. chap. 7, pt. A.3(b)).

Here, pursuant to Title 18, United States Code, Section 3583(e)(3), the Court may sentence the defendant to up to five years' incarceration. The applicable Guidelines range based on the defendant's violation conduct and criminal history category (VI) is 8 to 14 months' imprisonment. See U.S.S.G. § 7B1.4(a).

        B.      Argument for the Government's Proposed Sentence

The government respectfully submits that a proposed sentence within the Guidelines range, which is 8 to 14 months' imprisonment, to be followed by three years' supervised release, is sufficient, but not greater than necessary, to achieve the goals of sentencing for the defendant's violations of supervised release.

"The very purpose of a supervised release revocation hearing is to determine the gravity of the breach of trust committed by the defendant in the context of the conditional liberty []he was granted following [his] conviction of the underlying offense." United States v. Ramos, 979 F.3d 994, 1001 (2d Cir. 2020). The defendant first breached the Court's trust in February 2021 by committing a new federal crime based on violent and threatening

comments made to his ex-girlfriend. Following his custodial term for that violation, Borrello was released for only a matter of weeks before disregarding the Court's orders and violating again in July 2021. He has repeatedly shown that he has no respect for the law or orders of this Court, and has breached the Court's trust.

It is noteworthy that not only did the defendant violate the terms of his supervised release shortly after being released from custody, but his violations involved some of the same conduct for which he initially violated the terms of his supervised release, including glorifying his past violent organized criminal activity through social media. This is a serious violation of trust by which the defendant demonstrated no respect for the authority of this Court and no regard for the conditions of his supervised release.

Accordingly, each the Section 3553(a) factors weigh in favor of a sentence within the Guidelines range. First, the nature and circumstances of the offense were serious. Second, the defendant has a history of violating court orders and of violent and threatening conduct. Third, the need for deterrence is significant here given the serious nature of the violation and the defendant's pattern of disregard for court orders.

The defendant previously violated the Court's trust by squandering chances provided by the Court—at his initial sentencing and then again at sentencing on his first violation—to the defendant. On March 26, 2021, the Court stated that it was giving Borrello a "break," but it would be his last and, were there any additional violations, Borrello could receive a lengthy sentence of imprisonment. Borrello immediately violated again. A noncustodial sentence would send the message that this is business as usual for Gene Borrello, and orders of the Court can be flouted at the defendant's will. Borrello should be held accountable for breaching the Court's trust and failing to abide by the conditions imposed by the Court. A sentence between 8-14 months' imprisonment, followed by three years of supervised release, would achieve these goals.

III.    Conclusion

        For the foregoing reasons, the government respectfully submits that a sentence between 8 to 14 months' imprisonment, followed by three years of supervised release, is sufficient, but not greater than necessary, to achieve the goals of sentencing.

        Respectfully submitted,

        BREON PEACE
        United States Attorney

By:   /s/ Matthew R. Galeotti
       Matthew R. Galeotti
       Assistant U.S. Attorney
       (718) 254-6340

cc:    Clerk of Court (FB) (by ECF)
       Nancy Ennis, Esq. (by ECF and E-mail)
       Lee-Zen Kwok, U.S. Probation Officer (by E-mail)