

U.S. Department of Justice

*United States Attorney
Eastern District of New York*

MRG
F.#2016R01033

*271 Cadman Plaza East
Brooklyn, New York 11201*

January 17, 2023

<u>By ECF and Email</u>

The Honorable Frederic Block
United States District Court
Eastern District of New York
225 Cadman Plaza East
Brooklyn, New York 11201

        Re:    United States v. Gene Borrello
                <u>Criminal Docket No. 16-474 (FB)</u>

Dear Judge Block:

        The government respectfully submits this letter to provide a status report regarding the defendant and to request the following relief.  <u>First</u>, the government requests that the defendant be sentenced on February 8, 2023, in connection with violations of supervised release to which he pled guilty on November 16, 2021.  For the reasons set forth below, the government requests that the defendant be sentenced to an above-Guidelines sentence of thirty-six months' imprisonment—for those violations.  <u>Second</u>, the government requests a hearing date at the Court's earliest availability in connection with the charges against the defendant set forth in Probation's Violation Report dated September 12, 2022.  <u>Third</u>, the government requests that the Court order the defendant to provide to the Court, the United Stats Probation Department ("Probation") and the government his medical records that purportedly demonstrated a need to adjourn his sentencing that was previously set for January 18, 2023.

        As described in detail below, since his last appearance before the Court on June 15, 2022, the defendant has continued to violate the terms of his supervised release and engage in other criminal activity.  He has shown no regard for the orders of this Court or the law.  He is a danger to the community.  He has made no progress towards rehabilitation.  In fact, since the defendant was permitted to leave for Florida, his conduct has only become increasingly aggressive and dangerous.  The defendant has breached this Court's trust over and over and over again.  The defendant should be held accountable for his actions.

I.  Factual and Procedural Background

A.  The Defendant's Underlying Conduct and Plea

On November 9, 2016, the defendant pled guilty before United States Magistrate Judge Peggy Kuo, to (a) racketeering, including predicate acts of extortion conspiracy, illegal gambling, murder conspiracy/attempted murder, arson conspiracy/attempted arson, robbery and illegal gambling; (b) assault in aid of racketeering; (c) unlawful use of a firearm during a crime of violence; (d) arson; and (e) two counts of Hobbs Act robbery conspiracy. (Borrello's Presentence Investigation Report ("PSR"), ¶ 1.)[1] On November 16, 2016, the Court accepted Borrello's guilty plea. (Id. ¶ 89.)

On December 6, 2019, the Court sentenced the defendant to time served followed by three years of supervised release. (July 30 Report at 5.) At sentencing, the Court also imposed special conditions, including that the defendant could not associate with individuals affiliated with organized crime. (Id. ¶ at 6.)

B.  The Defendant's Previous Supervised Release Violations

On March 26, 2021, Borrello pled guilty to violating the terms of his supervised release by committing a new crime (interstate threats, in violation of 18 U.S.C. ¶ 875(b)); associating with individuals engaged in criminal activity; and associating with individuals affiliated with organized crime. (See July 30 Report at 2-5.) The first violation stemmed from threats Borrello made to his ex-girlfriend and her family members, some of which are included below.

| Borrell Audio | Instagram Audio Message |
|---|---|
| **Message One** | "the minute you call the cops on me and grow those balls, you watch, I will blow your husband's head right off in the middle of the street, fucking try me" |
| **Message Two** | "do not make me come to your fucking mother's house right now, I am dead fucking serious" |
| **Message Three** | "don't forget about me, remember what I used to do, I will grab your father right now and beat the dog shit out of him…Be happy I don't grab you and your fat ugly husband by the neck and drag you down the street." |

(See Violation Report, dated February 12, 2021 ("February 12 Report") at 8.)

---

[1]  A further description of Borrello's conduct is set forth in the July 30, 2021 violation report prepared by the United States Probation Department for the Eastern District of New York ("July 30 Report"). (See July 30 Report at 2-5.)

2

In addition, Borrello violated the terms of his supervised release by associating with convicted felons, including those associated with organized crime, primarily by hosting a podcast titled, "The Johnny and Gene Show." (Id. at 10-11.) Borrello produced twenty-seven of these podcasts even after he was directed to refrain from associating with known convicted felons. (Id.) On his podcast, Borrello glorified all aspects of organized criminal activities and described in detail various acts of violence in which he and his co-host, John Alite, had participated. In one segment, on September 12, 2020, Borrello hosted on his podcast Rob Rubeo, a former Genovese Crime Family member, who was also on supervised release. (Id. at 12.) Rubeo pled guilty to violating the terms of his supervised release in the Southern District of New York in connection with his appearance on the podcast. United States v. Rubeo, 12-CR-260 (RJS) (S.D.N.Y.) (Dkt. 72, 104).

Based on the conduct described above, on March 26, 2021, Borrello's supervised release was revoked, and the Court sentenced him to 120 days in custody, three years of supervised release and imposed special conditions. (July 30 Report at 7.) One special condition included a directive that Borrello refrain from participating in organized crime related podcasts, internet shows, or other similar programing, and refrain from using or accessing Instagram for a period of one year. (Id.) At the March 26, 2021 sentencing, the Court took notice of Borrello's "bad track record" and warned him against committing additional violations of his supervised release. Further, the Court stated that it was giving Borrello a "break," but it would be his last and, were there any additional violations, Borrello could receive a lengthy sentence of imprisonment.

### C. Pending Violations Set Forth in the July 30, 2021 Violation Report

Borrello was released from custody in June of 2021. On June 21, 2021, Borrello signed the conditions of his supervised release, which prohibit him from participating in any way with organized crime-related internet shows, discussing criminal activity or organized crime during the period of supervised release. (Id. at 8.) Borrello did not go a month before—again—violating the terms of his supervised release set forth in the Court's Order dated March 26, 2021. (Id. at 7-10.) Specifically, Borrello created and uploaded to YouTube incendiary videos in which, among other things, he glorified his past violent incidents and discussed his criminal history. (Id.)

For example, in a YouTube video titled "Getting violated by probation and going back to jail," Borrello discussed his version of the violation incident and provided a backstory regarding his ex-girlfriend and her husband. Borrello made disparaging remarks regarding his ex-girlfriend's husband, stating, "I'm not your fucking fat, goofy, boyfriend husband from Long Island. That fucking fat …. I got nasty and I said I'll blow his head off…" (Id. at 9.) Borrello also discussed other incidents with organized crime associates, and described private information about these individuals, including information about an organized crime member's wife and her sexual activity. (Id.) Borrello also made other comments regarding "shooting rats" and glorifying violence within the community of Howard Beach, Queens. (Id.)

As another example, on a YouTube video named "Ronnie do you smell that," Borrello described how he and Ronald Giallanzo, a federally convicted felon and former acting captain in the Bonanno Crime Family, assaulted a victim to recover money. (Id. at 10.) Borrello

3

glorified the incident by explaining that he was using brass knuckles and hitting the victim. Borrello stated on the video "Ron do you smell that?... The dude shit himself. We literally beat the shit out of him." Borrello further described bringing the victim back to the victim's residence where Borrello continued to physically assault the victim in front of his family. In the end, Borrello explained "how dangerous it is when you owe the 'mafia' money." (Id.)

On November 16, 2021, the defendant pled guilty to charges one and two of the July 30, 2021 Violation Report. (See Minute Entry, dated 11/16/21.)

### D. The Defendant's June 15, 2022 Sentencing

Following his plea, the defendant's sentencing proceeding took place before this Court on June 15, 2022. The government requested a Guidelines sentence of 8 to 14 months' imprisonment. The defense requested a non-incarceratory sentence and that the defendant be permitted to move to Florida. At that proceeding, relying heavily on Borrello's purported employment at T&G Roofing in Florida, the Court permitted Borrello to relocate to the Middle District of Florida, ordered the United States Probation Department of the Middle District of Florida to accept supervision of Borrello, and postponed Borrello's sentencing in the Eastern District of New York. (See June 15, 2022 Sentencing transcript "Tr." at 7, 8, 9, 10, 11, 12, 13, 14; see also Dkt. 56.) The defendant's sentencing on the charges to which he pled guilty on November 16, 2021 remains pending.

### E. September 12, 2022 Violation Report

Based on additional information the government and Probation have learned, the defendant had already violated the terms of his supervised release even before the June 15, 2022 sentencing proceeding. Specifically, the defendant left the federal judicial district (E.D.N.Y.) without permission from Probation and committed two new crimes. (See Violation Report, dated September 12, 2022 ("September 12 Report") at 1-2.) In addition, as described further below, in connection with his June 15, 2022 sentencing, the defendant made false statements to the Court and Probation regarding his purported employment offer from T&G Roofing.

First, on May 9, 2022, while impermissibly in Florida—i.e., prior to Borrello's approved relocation to Florida—Borrello and his then-girlfriend ("Victim-1") got into an argument at her residence. (September 12 Report at 3.) After Victim-1 advised Borrello that she would contact the police, Borrello "surprised her from coming around the corner and began 'manhandling' her, grabbing her arms, and they began wrestling with each other." (Id.) Borrello also took Victim-1's cell phone and "smashed it on the ground and stomped on it." (Id.) Borrello committed the crimes of Simple Battery (Domestic) – Touch or Strike, in violation of Florida statute 784.02(1)(A)(1) and Tampering with Witness – in Misdemeanor Proceeding, in violation of Florida statute 914.22(1). (Id. at 4.) Both of these crimes were committed in the Middle District of Florida, despite the fact that, in May of 2022, Borrello had never received permission to leave the Eastern District of New York.

In addition, the government's investigation has revealed that the defendant provided false information and submitted a false writing to the Court about his employment status in Florida, conspiring with another individual ("Co-Conspirator-1") to do so. In advance

4

of his sentencing on June 15, 2022, Borrello's counsel filed a sentencing memorandum that stated, in part, that Borrello "ha[d] obtained a serious job offer as a roofer in Tampa Bay, Florida…[he] assures that neither his Florida friends nor his new would-be employer have any criminal convictions." An unsigned "offer letter for the position of a roofing contractor at T&G Roofing" was attached to the sentencing memorandum, which included a specific address in Oldsmar, Florida and a phone number. At sentencing on June 15, 2022, the defendant represented to the Court himself and through counsel that he would be working as a roofer in Florida. (Tr. 10, 13).

Law enforcement's investigation has revealed that the purported letter of employment from T&G Roofing was not written by someone with authority to make an employment offer at T&G Roofing. After being confronted regarding his employment status, on June 23, 2022, Borrello told Probation he would instead be working for a company called "Labor Finders." However, as the government has learned, Labor Finders has no record of employment for Borrello. In addition, the government's investigation revealed that the contact number Borrello listed for Labor Finders was in fact being operated at the time by Borrello's friend, Co-Conspirator-1. In short, Borrello fabricated both offers of employment and listed phone numbers leading to Co-Conspirator-1, who Borrello knew would (falsely) confirm Borrello's employment, if contacted.

### F.  Violations and Misconduct Following the June 15, 2022 Sentencing

Following his Court-approved departure to Florida on June 15, 2022, Borrello continued to violate the terms of his supervised release.

On July 14, 2022, Borrello and Victim-1 got into another argument that again required police intervention. (September 12 Report at 4.) Police questioned Borrello at the scene, and Victim-1 was later granted an order of protection against Borrello in local court. (Id.) Borrello never reported this law enforcement contact to Probation, in violation of his standard conditions of supervision.

Borrello also violated three conditions of supervision related to an unauthorized second cellular phone: possession of a second personal Internet-capable device; failing to truthfully answer questions asked by Probation; and failing to install monitoring software on his device.

On July 22, 2021, Borrello's Android cellular telephone (the "Android") was enrolled in Probation's monitoring program. (Id. at 6.) On February 11, 2022, Borrello said a second cellular telephone on his T-Mobile plan (an unmonitored iPhone (the "iPhone")) was used by his brother, not him. (Id.) On February 16, 2022, Borrello claimed to have cancelled the iPhone, at the direction of Probation. (Id.) On June 23, 2022, Borrello denied having a second telephone. However, law enforcement's investigation related to the July 14, 2022 domestic incident discussed above revealed that Borrello was using the iPhone, i.e., the phone he was directed by Probation to cancel in 2021. (Id. at 7.) This number remains active and listed in Borrello's name. (Id.)

5

Borrello also committed the crime of Stalking, in violation of Florida State Penal Law 784.048(2), which is also another violation of the terms of his supervision. (Id.) On September 8, 2022, Borrello was arrested after violating the order of protection filed against him by Victim-1. (Id.) Borrello went through Victim-1's cellular telephone without her permission and then "began to call and text messag[e] the victim incessantly." (Id.) On September 8, Borrello "contacted the victim fifty-eight times between 1:41pm and 2:08pm." (Id. at 8.)

G. Uncharged Conduct Since June 15, 2022

In addition to the charged violations, there is significant evidence that Borrello has continued to engage in other destructive, illicit, and menacing conduct since he was released to Florida on June 15, 2022.

In September of 2022, federal agents executed a judicially-authorized warrant to search and seize Borrello's cellular telephone (the "Warrant"). Evidence recovered from the phone included communications between Borrello and Co-Conspirator-1 in which they discussed stalking and threatening a victim ("Victim-2"). On September 2, 2022, at 10:48pm, Co-Conspirator-1 sent Borrello a screenshot of a text exchange between Co-Conspirator-1 and Victim-2 as well as a photo of Victim-2. For example, Co-Conspirator-1 sent Borrello an address at which Victim-2 was located, along with the message "Im gonna kill this mfer." Borrello responded at 10:52pm, writing "I got this," and at 10:53pm writing, "Bro I'm cracking him." At 1:22am on September 3, Co-Conspirator-1 texted Borrello "I wish you had a GoPo when all this went down omg," and Borrello responded "Bro he's a herb he can't talk tuff no more."

On September 3, at 1:38pm, the Pinellas County Sheriff's Office arrived at a lounge in response to a call by Victim-2. Victim-2 told police that the previous night, September 2, at approximately 10:50pm, he was serving patrons at the bar when an unidentified male subject entered the lounge and began yelling at him to go outside to talk. (Id. at 6.) The subject told Victim-2 that he was sent by Co-Conspirator-1 to deliver the message "you're fucking dead." (Id.) Victim-2 also saw the subject lift up his shirt to reveal something black in his waistband before he left the lounge. (Id.) A witness captured two photos of the subject's black SUV leaving the scene. On September 8, 2022 when Borrello was arrested for stalking, traffic stop photos show he was driving a black SUV.

Borrello's text messages, reviewed pursuant to the Warrant, also revealed further potential criminal conduct. Specifically, on June 29, 2022, Co-Conspirator-1 sent Borrello a picture of a firearm. Co-Conspirator-1 also sent a message to Borrello referencing the straw purchase of firearms and a reference to a shotgun.

Pursuant to the same search, law enforcement discovered that, on several occasions, Borrello referenced his personal use of controlled substances. For example, on August 26, 2022, Borrello texted Co-Conspirator-1, "Bring me my steroids." In other conversations via text message, Borrello discusses steroids, Xanax, "pills," "winy" or "winny" (steroids), and "juice" (steroids).

6

Significantly, in a separate series of text messages, reviewed pursuant to the Warrant, Borrello admitted to "lying" to the Court and Probation. Specifically, on May 10, 2022, Borrello texted an associate, "Fucked with probation." On May 18, 2022, Borrello texted "Someone called my burner number." And on July 11, 2022, Borrello texted Co-Conspirator-1 "If my PO calls there I'm done I lied again."

Borrello's criminal conduct has continued since that time. On October 23, 2022, Victim-1 told police that she was fearful of Borrello after yet another domestic incident which had taken place on October 21, 2022. On or about December 10, 2022, the defendant was arrested on burglary charges in Pinellas County. On or about January 11, 2023, the defendant was again arrested by the Pinellas County Police Department for stalking.

II. The Defendant Should be Sentenced to Thirty-Six Months' Imprisonment for the Violations Set Forth in the July 30, 2021 Violation Report

A. Sentencing on a Violation of Supervised Release

A district court has "broad discretion" in imposing sentencing, and in the context of a violation of supervised release proceeding, the Court can revoke supervised release and order a term of imprisonment followed by additional supervision. See United States v. Wirth, 250 F.3d 165, 169 (2d Cir. 2001).

As the Second Circuit has explained, "'the primary goal of a revocation sentence' ought to be 'to sanction the violator for failing to abide by the conditions of the court-ordered supervision,' in order to account for the breach of trust inherent in failing to appreciate the privileges associated with such supervision." United States v. Sindima, 488 F.3d 81, 86 (2d Cir. 2007) (quoting U.S.S.G. chap. 7, pt. A.3(b)); accord United States v. Gonzalez, 634 F. App'x 15, 18 (2d Cir. 2015). "Thus, 'at revocation the court should sanction primarily the defendant's breach of trust, while taking into account, to a limited degree, the seriousness of the underlying violation and the criminal history of the violator.'" Sindima, 488 F.3d at 86 (quoting U.S.S.G. chap. 7, pt. A.3(b)).

Here, pursuant to Title 18, United States Code, Section 3583(e)(3), the Court may sentence the defendant to up to five years' incarceration. The applicable Guidelines range based on the defendant's violation conduct ("Grade B") and criminal history category (VI) is 21 to 27 months' imprisonment. See U.S.S.G. § 7B1.4(a). For the reasons described herein, a sentence above the guidelines—specifically, thirty-six months' imprisonment—is warranted here.

B. Argument for the Government's Proposed Sentence

The government respectfully submits that a sentence of thirty-six months' imprisonment is necessary to achieve the goals of sentencing for the defendant's repeated violations of supervised release.

"The very purpose of a supervised release revocation hearing is to determine the gravity of the breach of trust committed by the defendant in the context of the conditional liberty []he was granted following [his] conviction of the underlying offense." United States v. Ramos, 979 F.3d 994, 1001 (2d Cir. 2020). The gravity of Borrello's breach of trust cannot be

7

understated. Borrello blatantly disregarded the Court's orders in July 2021 by continuing to post videos to YouTube glorifying his criminal conduct. On June 15, 2022, he stood before the Court having impermissibly traveled to Florida one month prior, where he was arrested for two crimes. He did not disclose the visit or the arrests to the Court. Instead, he engaged in further misconduct by submitting a forged letter of employment and making misrepresentations to the Court.

After the Court permitted Borrello to move to Florida in reliance on his (forged) letter, Borrello continued to commit crimes. He treated his conditional release as a license to commit unfettered violations, lying to Probation about his law enforcement contacts and discussing his unlawful behavior on an unauthorized burner phone. Borrello's text messages leave no doubt that he is utterly unconcerned with the conditions of his supervised release and believes he will never be held accountable for his actions.

The defendant has engaged in repeated violent and aggressive conduct with two separate victims. He discussed the use of firearms. He personally used controlled substances. He lied to the Court and Probation. He has demonstrated to the Court how he will treat second, third, and fourth chances.

Accordingly, each of the Section 3553(a) factors weigh in favor of a sentence at the top of the Guidelines range. First, the offenses charged are not just technical violations. They include serious crimes, violent and deceptive in nature. Second, the defendant has continually violated court orders and flouted the conditions of his release. Third, the need for deterrence is extremely significant given the defendant's systematic disregard for the rules imposed by the Court. Fourth, there is a need to protect the public from Borrello's threats and violence.

Gene Borrello, from his actions and words, has made it unquestionably clear that he will be undeterred by a noncustodial sentence. Since February 2021, Borrello has established a pattern of breaching the Court's trust. His violations, no longer limited to YouTube videos and podcasts, physically endanger those with whom he comes in contact. The severity and breadth of Borrello's conduct justify a sentence above the Guidelines.

### III.   The Government Requests a Hearing on the September 12, 2022 Violation Report

As set forth above, although the defendant has yet to be sentenced on his July 30, 2021 violations of supervised release, he continues to commit additional violations. The government believes that it is unlikely to reach an agreement with the defendant on an appropriate sentence for the September 12, 2022 violations. Therefore, the government requests that the Court set a hearing date regarding the September 12, 2022 violations at the Court's earliest availability.

### IV.   The Court Should Order the Defendant to Produce His Medical Records

On January 12, 2023, the defendant requested an adjournment of his sentencing before this Court, previously scheduled for January 18, 2023, purportedly due to a contagious illness. Defense counsel provided a screenshot of medical records. The government agreed to an adjournment, so as not expose individuals on a flight with the defendant, on the condition that

the defendant produce medical records establishing the illness. As of this writing, the government has not received any records. Given the defendant's prior false statements to the Court and Probation, law enforcement conducted additional investigation into the defendant's purported illness. The government has learned that the defendant was out in public approximately sixteen hours prior to his request for an adjournment of sentencing and then again on or about January 17, 2023, one day before the defendant was due to be sentenced before this Court. For those reasons, the Court should order the defendant to produce the medical records on which he relied in seeking an adjournment of his January 18, 2023 sentencing date.

V.  Conclusion

For the foregoing reasons, the government respectfully submits that the Court sentence the defendant to thirty-six months' imprisonment, set a hearing date in connection with the September 12, 2022 Violation Report, and order the defendant to produce the above-described medical records.

Respectfully submitted,

BREON PEACE
United States Attorney

By:   /s/ Matthew R. Galeotti
Matthew R. Galeotti
Assistant U.S. Attorney
(718) 254-6340

cc:   Clerk of Court (FB) (by ECF)
Nancy Ennis, Esq. (by ECF and E-mail)
Lee-Zen Kwok, U.S. Probation Officer (by E-mail)